United States District Court
Southern District of Texas
**ENTERED**
February 27, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Milton Miles, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-17-3406 |
| | § | |
| Nancy A. Berryhill, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration | § | |
|     *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Milton Miles appeals the Commissioner's final decision denying his application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 12) and Defendant's Cross-Motion for Summary Judgment (D.E. 13.) The court recommends that the final decision of the Commissioner be **REVERSED** and this case be **REMANDED** for further proceedings consistent with this Memorandum and Recommendation.

1. **Procedural Posture**

Miles applied for disability insurance benefits on December 27, 2010. (Tr. 2410.) He claimed that he was disabled due to physical limitations with an alleged

disability onset date of October 21, 2010. (Tr. 159, 2410.) In his application, Miles stated that he was born in 1965 and worked as a loader and shipper until October 2010. (Tr. 307, 2410.) The Social Security Administration (SSA) denied Miles's application on December 19, 2011. (Tr. 2417.) Miles filed a request for reconsideration, but the SSA again denied his application. (*See* Tr. 2424.)

On June 19, 2014, an administrative hearing was held. (*See* Tr. 2424.) ALJ Vadim Mozyrsky issued a decision on August 22, 2014, finding Miles not disabled. (Tr. 2424–31.) Miles appealed. The Appeals Council remanded the case on September 25, 2015, and ordered the ALJ to (a) consider Miles's hearing impairments at step 2, (b) follow regulations on treating source opinions, (c) reconsider the maximum residual functional capacity (RFC) and provide rationale with specific references to the evidence in the record, and (d) obtain supplemental evidence from a vocational expert (VE), if warranted. (Tr. 2433.)

On April 5, 2016, ALJ Donald J. Willy held an administrative hearing. (Tr. 2531.) On May 9, 2016, the ALJ issued a "partially favorable" decision, finding that Miles had been disabled from October 21, 2010, through November 1, 2011, but that his disability ended on November 2, 2011. (Tr. 23–40.) The ALJ found that Miles's current impairments allowed him to perform work in the national economy. (Tr. 37–40.) The Appeals Council denied Miles's request for review on

September 5, 2017. (Tr. 8.) Miles filed this complaint in federal court to appeal the Commissioner's final decision. (D.E. 1.)

**2. Legal Standards**

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

**A. Closed Period of Disability**

**i. Medical improvement standard**

Where, as here, the Commissioner "determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision," the applicant's case is classified as a case involving a "closed period of disability." *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987). The Fifth Circuit has held that the "medical improvement" standard in 42 U.S.C. § 423(f), which governs the termination of benefits, also applies to cases involving a closed period of disability. *Waters v. Barnhart*, 276 F.3d 716, 718–19 (5th Cir. 2002).

Under the medical improvement standard, the burden of proof is placed on the Commissioner to prove that the person is no longer disabled. *Waters*, 276 F.3d at 718 ("Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled."); *see Hollis v. Astrue*, No. CIV.A. 11-2551, 2013 WL 1176253, at *15 (E.D. La. Mar. 4, 2013) ("The difference between the five-step sequential analysis under § 404.1520 and the medical improvement standard is the allocation of the burden of proof."), *report and recommendation adopted*, No. CIV.A. 11-2551, 2013 WL 1176250 (E.D. La. Mar. 19, 2013).

The Commissioner must support its finding that a person is no longer disabled with substantial evidence which demonstrates that there has been any medical improvement in the individual's impairment or combination of impairments that relates to the individual's ability to work, and the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1); *see also* 20 C.F.R. § 404.1594(a) (West 2016).

### ii. Eight-step approach to determine closed period disability

Ordinarily, the Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is

disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

In a closed period disability case, the Commissioner must follow an eight-step sequential evaluation process to determine whether the person's disability has ceased. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5) (West 2016). First, the Commissioner determines whether the person has engaged in substantial gainful activity. *Id.*

Second, the Commissioner asks whether the person has "an impairment or combination of impairments which meets or equals the severity of an impairment listed" in appendix 1 to Subpart P of 20 C.F.R. pt. 404 ("appendix 1"). 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i) (West 2016). If the person does have a listed impairment, the Commissioner finds the disability to continue. *Id.*

Third, the Commissioner asks whether there has been any medical improvement, defined as "any decrease in the medical severity of [the person's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1) (West 2016). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the person's]

5

impairment(s)." *Id.* "If there has been no decrease in medical severity, there has been no medical improvement." *Id.* §§ 404.1594(f)(3), 416.994(b)(5)(ii).

Fourth, the Commissioner asks if the medical improvement is related to the applicant's ability to work. 20 C.F.R. §§ 404.1594(c), (f)(4)–(5), 416.994(c), (b)(5)(iii) (West 2016). If "there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination," the medical improvement is related to the persons' ability to work. *Id.* §§ 404.1594(f)(4), 416.994(b)(5)(iii).

Fifth, if the medical improvement is not related to the ability to work, the Commissioner asks if any exceptions to the medical improvement apply. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv) (West 2016). If none of the exceptions apply, the person's disability is found to continue. *Id.*

Sixth, if the Commissioner finds that the medical improvement is related to the person's ability to work, the Commissioner determines whether all of the claimant's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v) (West 2016). This determination will consider all of the person's "current impairments and the impact of the combination of those impairments on [the person's] ability to function." *Id.* "When the evidence shows that all [of the] current impairments in combination do not significantly limit [the person's] physical or mental abilities to do basic work activities, these impairments

6

will not be considered severe in nature." *Id.* If so, the person is no longer disabled. *Id.*

Seventh, if the previous analysis shows significant limitation of the ability to do basic work activities, the Commissioner must assess the RFC and determine whether the person could perform past work. 20 C.F.R. §§ 404.1594(f)(6)–(7), 416.994(b)(5)(vi) (West 2016). If so, the person is no longer disabled. *Id.*

Eighth, if the person can no longer perform past work, the Commissioner must consider whether the person can perform other work in the national economy. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii)–(viii) (West 2016). If it is found that the person can adjust to other work based on RFC, age, education, and past work experience, the person is no longer disabled. *Id.*

### B. Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to

examine the record as a whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.*

But, again, here the Commissioner bears the initial burden of proof because it is a closed period disability case. *Waters*, 276 F.3d at 718 ("Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled.")

### 3. The ALJ's Decision and the Administrative Records

#### A. Hearing

ALJ Willy held the administrative hearing on April 5, 2016. (Tr. 2531.) At the hearing, Miles, medical expert (ME) Dr. John Onadago, and vocational expert (VE) Mr. Herman Litz testified. (Tr. 2532.)

The ME testified that from October 1, 2010, to November 1, 2011, Miles had discitis at L4/L5 and fungal osteoarthritis pronounced at L4 due to a back injury he sustained in 2010. (Tr. 2540.) His interpretation of the medical records

8

suggested that Miles's infection was cured with treatment, and Miles could now perform light work. (Tr. 2537, 2540–41.)

The ME's testimony was focused on his disagreement with the treating physician, Dr. Joseph Boucree's RFC assessment. (*See* Tr. 2549–74.) Dr. Boucree found that Miles's level of physical impairment was "Class 5—Severe limitation of functional capacity; incapable of minimum (sedentary) activity (75–100%)." (Tr. 2400.) He opined that Miles "can't work [at] present time; restricted range of motion to lumbar spine with abnormalities to lumbar spine noted on MRI." (Tr. 2402.) According to Dr. Boucree, Miles could not engage in any gainful employment and should never do the following activities: climbing, balancing, stooping, bending, kneeling, crouching, reaching (overhead, outward, and downward), handling, fingering, power grip, forearm rotation, and keyboard use. (Tr. 2402–04.)

The ME disagreed with Dr. Boucree. It was the ME's opinion that Miles had the RFC to perform light work but he needed to "have a sit to stand option every three hours for five minutes to change position." (Tr. 2543, 2552.)

Miles testified about his pain and stated that "standing for long periods, sitting for long periods, lying down, bending" aggravated his pain. (Tr. 2581.) He testified that he could only stand for 20–30 minutes at a time without the pain

9

worsening. (Tr. 2582.) Miles testified that he had taken hydrocodone from 2010 and was taking it daily at the time of the hearing. (Tr. 2583.)

The VE testified that a person with Miles's RFC could work as a small products assembler, mail clerk, and ticket seller, and would be required to "be on task at least 90 percent" and "attend the work [sic] missing no more than two days per month." (Tr. 2591.)

### B. ALJ's decision

ALJ Willy issued his decision on May 9, 2016, finding that Miles was disabled from October 1, 2010, to November 1, 2011, but that his disability ended on November 2, 2011. (Tr. 19–40.) The ALJ stated that the MRI on October 18, 2011 showed changes at L4–L5 but they were "not due to the prior osteomyelitis, but due rather to pre-existing degenerative changes." (Tr. 26.) The ALJ considered the VE's testimony that an individual would need to be on task at least 90% of the time and not miss more than two days a month to maintain competitive employment. (Tr. 27; *see* Tr. 2591.) The ALJ found that Miles had to be off task 20% of the time and take more than two days a month and concluded that Miles was disabled from October 2, 2010, to November 2, 2011. (Tr. 26–27.)

The ALJ then found that Miles "has not developed any new impairment or impairments since November 2, 2011, the date the claimant's disability ended." (Tr. 27.) He found that Miles had the same severe impairments as during the

previous period. (Tr. 27.) The ALJ found that medical improvement occurred as of November 2, 2011. (Tr. 29.)

The ALJ concluded that Miles's medical improvement was related to his ability to work "because there had been an increase in his [RFC]." (Tr. 30.) In reviewing Miles's MRI record dated October 18, 2011, the ALJ determined that "[c]hanges at L4-5 were likely not due to the prior osteomyelitis condition, but due to pre-existing degenerative changes." (Tr. 32.)

The ALJ concluded that for the period beginning on November 2, 2011, Miles had the RFC to perform light, sedentary work with some restrictions. (Tr. 34–37.) Significantly, the ALJ found that Miles could be on task at least 80% of the time. (Tr. 38.) For that reason, the ALJ found that Miles could maintain competitive employment and that his disability had ended. The court notes, and will discuss below, that the VE testified that Miles would have to be on task 90% of the time to maintain competitive employment. (Tr. 2591.)

### 4. Analysis

The ALJ erred at the fourth step of the eight-step sequential analysis. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b) (West 2016). The ALJ's findings that Miles's medical improvement was related to his ability to work and that he was able to participate in substantial gainful activity are not supported by substantial evidence. Moreover, the burden of proof was on the ALJ to find that

11

Miles's disability terminated on November 2, 2011, *see Waters*, 276 F.3d at 718, but the ALJ failed to meet that burden.

Under the medical improvement standard, the Commissioner must first prove that (1) there has been a medical improvement and that (2) the improvement is related to the applicant's ability to work. *See Waters*, 276 F.3d at 718; 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b) (West 2016). The regulation defines medical improvement as "any decrease in the medical severity of [the person's] impairment(s) which was present at the time of the most recent favorable medical decision that [the person was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1) (West 2016). The Commissioner must find that the person's disability continues if there is no medical improvement or the medical improvement is not related to the ability to work, and none of the exceptions apply. *Id.* §§ 404.1594(f)(5), 416.994(b)(5)(iv).

Here, the ALJ correctly found that Miles had a medical improvement. Miles's "osteomyelitis was resolved by a hospital admission in 2010, and after several readmissions, with treatment for bacterial infections and fungal infections." (Tr. 29.) That finding is supported by medical evidence.

Substantial evidence does not exist to support the ALJ's conclusion that Miles's medical improvement was related to his ability to work. A medical improvement is related to the ability to work if "there has been an increase in the

residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination." 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii). To conduct this analysis, the ALJ must consider both prior and current impairments and compare the two corresponding RFCs to determine whether the medical improvement is related to the applicant's ability to work. *Cf. Mables v. Sullivan*, 812 F. Supp. 886, 892 (C.D. Ill. 1993) ("Under either step 4 or step 5 [of the eight-step analysis], the ALJ would be required to consider both prior and current impairments to determine whether the plaintiff is disabled."). In other words, the ALJ must find an increase in the applicant's RFC to show that the medical improvement relates to the ability to work.

Here, the critical difference between Miles's RFC before November 2, 2011, and Miles's RFC after that date, as determined by the ALJ, focused on the amount of time that Miles would need to be "off task."

The ALJ defined Miles's RFC between October 21, 2010, and November 1, 2011, as follows:

> [Miles could] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the necessity to be **off task 20% of the time** in performing job tasks due to symptoms from his severe impairments, and the necessity to be absent from work more than two days a month due to symptoms and treatment of his lumbar osteomyelitis.

(Tr. 25 (emphasis added).)

The ALJ defined Miles's RFC after November 2, 2011, as follows:

13

> except for occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, sitting for 6 hours in an eight hour workday, standing and walking for 6 hours in an eight hour workday, with the option to alternate sitting or standing every two hours for five minutes, with no exposure to fumes, dust, odors, pollutants, extremes of heat or cold, and no work requiring the hearing of low tone of voice commands.

(Tr. 34.) The ALJ found that Miles could be on task more than 80% of the time after November 2, 2011. (Tr. 38.)

There are two problems with the ALJ's analysis. First, substantial evidence does not exist to support the ALJ's quantitative assessment of Miles's on-task abilities for either RFCs. Second, the ALJ appears to have misunderstood or misapplied the VE's testimony about the amount of time Miles would have to be on task to maintain competitive employment.

The ALJ's finding that Miles's medical conditions required him to be off task 20% of the time in the first period, but that his medical conditions allowed him to be on task more than 80% of the time in the second period is not supported by substantial evidence. (*See* Tr. 25–26, 38.) The ALJ did not explain the basis for his quantitative analysis. The ME's testimony does not support the percentage cited by the ALJ. Most of the ME's testimony focused on rejecting Dr. Boucree's RFC, not quantifying Miles's ability to be on task. (*See* Tr. 2549–50, 2561, 2573–74.) The only quantified estimate that the ME gave was that Dr. Boucree's most recent physical examination of Miles suggested he retained 75% of his muscular

14

strength. (*See* Tr. 35, 2561.) This finding does not explain Miles's ability to meet the on-task requirements.

To the extent that the ME testified about Miles's medical improvements, he did not discuss the amount of time Miles could be on task. There is no evidence in the record from which the ME or the ALJ could have derived the percentages that the ALJ cites in his decision.

The ALJ's finding that Miles's spinal condition was returned to the state that it was in prior to 2010—a factor the ALJ may have considered with respect to Miles's capability to remain on task—is not supported by substantial evidence. Critically, the ALJ misread Miles's 2011 MRI. The ALJ found that "[c]hanges at L4–5 were likely **not** due to the prior osteomyelitis, but due rather to pre-existing degenerative changes." (Tr. 26 (emphasis added).) That is not what the 2011 MRI said. It said that "there is loss of disk height with extensive end plate irregularity consistent with scarring and changes related to prior infection **and** likely pre-existing degenerative end plate changes." (Tr. 2127 (emphasis added).) In other words, while some of Miles's spinal problems were pre-existing, they were exacerbated by the infection.

Thus, the ALJ's conclusion that Miles had worked with the same spinal impairments as he had after November 2, 2011, is not supported by substantial evidence. (*See* Tr. 35.) Moreover, MRI diagnostics in 2012 and 2015 showed

15

worsening changes in Miles's C6–C7 cervical spine and L3–L4, L4–L5, L5–S1 lumbar spine. (*Compare* Tr. 2127 *with* Tr. 2151, 2491, 2496.) The ALJ's conclusion that Miles was able to be on task more than 80% of the time is not supported by substantial evidence.

The second problem with the ALJ's analysis is that he appears to have misunderstood or at least misapplied the VE's testimony. With respect to the period from October 2, 2010, to November 1, 2011, the ALJ quoted the VE as testifying "that an individual would have to have been on task 90% of the time and not miss more than two days a month to maintain competitive employment." (Tr. 27.) But then, in discussing the period after November 2, 2011, the ALJ quoted the VE as testifying "that the claimant would have to be on task 80% of the time and not miss more than 2 days' work a month." (Tr. 38.) The court cannot tell from the ALJ's decision which percentage the ALJ relied upon in determining that Miles was not disabled after November 2, 2011. The difference is critical. For instance, under the 90% requirement, a worker who can be on task 85% of the time would be deemed disabled, but that same worker would not be disabled if the requirement were 80%.

No exceptions to the medical improvement applied. *See* 20 C.F.R. §404.1594(d)–(e), 416.994(b)(3)–(4) (listing exceptions).

For all of these reasons, the ALJ's decision that Miles had a medical improvement relating to his ability to work is unreliable. "When the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). Here, the ALJ's error is material because the on-task requirement was central to his conclusion.

Because there is no substantial evidence to support that Miles had a medical improvement related to his ability to work and no exceptions listed in the regulations apply, a remand is justified. *See* 20 C.F.R. §§ 404.1594(f)(5), 416.994(b).

### 4. Conclusion

The record reflects that the ALJ's decision was not supported by substantial evidence. That issue alone provides ground for reversal and remand. Further, the Commissioner failed to meet its burden to prove that Miles had a medical improvement related to his ability to work.

A review of the pleadings and the record on file reflects that there is no genuine issue of material fact in this case, and summary judgment is therefore appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Miles's motion for summary judgment be **GRANTED** and the Commissioner's

motion for summary judgment be **DENIED** as detailed in this opinion, and that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings in accordance with this opinion.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 26, 2019.

_____
Peter Bray
United States Magistrate Judge